-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT HORTON,

        Petitioner,

        -v-

JEFF MCCOY, Superintendent Greene
Correctional Facility,

        Respondent.

DECISION and ORDER
11-CV-0034M



## I. INTRODUCTION

Petitioner, Robert Horton, an inmate at the Greene Correctional Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a conviction, entered in Chemung County on or about December 16, 2002, upon a plea of guilty, of forgery in the second degree (N.Y. Penal L., § 170.10(1)).[1] (Docket No. Petition, at 2.) Petitioner claims that the County Court erred when it accepted his plea of guilty without informing him that the sentence imposed would run consecutively to a prior undischarged sentence and that, therefore, the plea was not knowing and voluntary. (Petition, at 2, 5-6.) Petitioner also claims that he was denied the effective assistance of trial counsel and that, since the New York State Department of Correctional Services did not have the authority to direct that his sentences run consecutively, he is being held beyond the maximum expiration date of the court imposed sentence. (*Id.*, at 2, 5-7.)

---

[1] Petitioner also states that in 2006, he was convicted in Erie County Court following a plea of guilty to first degree absconding from temporary release but that he is not challenging this conviction. (Docket No. 1, Petition, at 2, 5.)

Upon transfer of the petition to this Court from the United States District Court, Northern District of New York, the Court directed petitioner to show cause why the petition should not be dismissed as untimely, pursuant to 28 U.S.C. § 2244(d)(1), and to file a § 2254 Timeliness Response Form. The Court had determined from the petition that the petition had not been filed within one year after the conviction became final pursuant to § 2244(d)(1)(A)[2] and that if petitioner was relying on the "delayed accrual" date of § 2244(d)(1)(D), "the latest possible date that petitioner could have discovered with due diligence the factual predicate of his claim--*i.e.*, DOCS's administrative imposition of consecutive sentences--would have been the date he received his second Legal Date Computation [printout], which is dated December 9, 2005." (Docket No. 7, Order, at 4-5.)

Petitioner filed a Response and claims that pursuant to delayed accrual date of § 2244(d)(1)(D)--the sub-section he expressly relies on herein--his claims are timely because it was not until approximately February 17, 2010 that he was informed by a inmate law clerk that he had grounds for a claim and that he first had to exhaust those claims in the state courts before filing a petition in federal court. (Docket No. 8.) Petitioner claims he filed a motion pursuant to N.Y.Crim.Proc.L., § 440.10 ("440.10 Motion") on April 15, 2010, and that his request for leave to appeal to the New York Court of Appeals from the denial of his

---

[2] As set forth in the prior Order directing petition to show cause why the petition should not be dismissed as time-barred (Docket No. 7, Order), petitioner did not appeal from the conviction at issue (Petition, at 6) and, therefore, the conviction became final thirty days after the date of conviction (January 15, 2003). *Bethea v. Girdich*, 293 F.3d 577, 578-79 (2d Cir. 2002) (petitioner's state court judgment became "final" when the 30-day period for filing a notice of appeal from his judgment of conviction expired) (citing N.Y. Crim.Proc.L., § 460.10(1)). Petitioner's time to file a petition for a writ of habeas corpus therefore expired on January 15, 2004. 28 U.S.C. § 2244(d)(1)(A). While petitioner did file a motion pursuant to N.Y.Crim.Proc.L., § 440.10, it did not serve to "toll" the statute of limitations pursuant to 28 U.S.C. § 2244(d)(2) because the motion was not filed until the statute of limitations had already expired. See *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000) (per curiam) (AEDPA's tolling provision does not reset date from which the one-year limitations periods begins to run); see also *Youngblood v. Greiner*, No. 00 CIV. 7984, 2003 WL 145546, at *2 n. 3 (S.D.N.Y. Jan.21, 2003) ("*Smith v. McGinnis* ... made clear that the limitations period does not begin anew after collateral relief is pursued.").

440.10 was denied on November 5, 2010. *See* n. 4, *infra*. The instant petition was filed on or about January 3, 2011. For the following reasons, this Court finds that the petition must be dismissed as untimely.

## II. DISCUSSION

As noted, Petitioner claims for relief rest on the grounds that his plea was not knowing and voluntary and that he was represented by an ineffective counsel inasmuch as he was not informed that the sentence on the conviction at issue and a prior undischarged sentence would run consecutively. Further, in 2005, upon his transfer to the Livingston Correctional Facility, he received a second "Legal Date Computation" in which he claims that "DOCS administratively imposed [his] sentence to run consecutively to his prior undischarged term . . . [that] resulted in his 'legal dates' to be recomputed." His recomputed dates were increased to: Parole Eligibility Date: April 26, 2007, from May 17, 2004; Conditional Release Date: February 25, 2011, from January 17, 2005; and Maximum Expiration Date: January 25, 2015, from May 17, 2006. (Petition, ¶¶ 13-14, at 3-4, and Exh. D.)[3] The second Legal Date Computation printout he received upon his transfer is dated December 9, 2005. (*Id.*, ¶ 14, at 4, and Exh. D.)

This Court noted in its prior Order directing petition to file a § 2254 Timeliness Response Form that, pursuant to 28 U.S.C. § 2244(d)(1)(D)--delayed accrual--, the latest possible date that petitioner could have discovered with due diligence the factual predicate of his claim--*i.e.*, DOCS's administrative imposition of consecutive sentences--would have been the date he received his second Legal Date Computation, which is dated December

---

[3]Petitioner claims that upon entering DOCS his "first" Legal Date Computation, computed his legal dates as: Parole Eligibility Date: May 17, 2004; Conditional Release Date: January 17, 2005; and Maximum Expiration Date: May 17, 2006. (Petition, ¶ 3, at 3-4.)

3

9, 2005. Petitioner's Response argues that December 9, 2005, the date of second Legal Date Computation Form, is not the latest date he could have discovered with due diligence the factual predicate of his claim because

> [a]t the time [he] received the Computation [he] spoke with inmate law clerks at the facility law library and was informed that the issuance of two or more Legal Date Computations where multiple sentences are involved is common practice in DOCS, and that [he] had no grounds upon which to state a claim. It was not until the Spring of 2010 ([a]pproximately February 17, 2010) that I was informed by a law clerk who also happened to be a disbarred lawyer that not only did I have grounds to state a claim, but the previous law clerks had given me false information due to the likely probability I could not afford to 'pay them' for assistance.

(Docket No. 8, Response, ¶ I.)

Petitioner also claims that with the assistance of the inmate law clerk he filed a § 440.10 motion because he had been advised that before he could file a petition for a writ of habeas corpus he had to "be eligible for immediate release"[4] and needed to exhaust his state judicial remedies. (*Id.*) Upon the exhaustion of his state judicial remedies,[5] he was

---

[4]The initial Legal Computation Date printout noted that petitioner's maximum expiration date was May 17, 2006. (Petition, ¶ 3, at 3-4; see n.4, *supra*.)

[5]Petitioner filed a § 440.10 Motion in County Court on April 15, 2010; it was denied on July 6, 2010. He filed an appeal (presumably, an application for a certificate granting leave to appeal) with the Appellate Division, Fourth Department, *see* N.Y. Crim. Proc. L., §450.15(1), on August 3, 2010, which was denied on September 23, 2010. He also filed an "appeal" (presumably, an application for a certificate granting leave to appeal) with the New York Court of Appeals, *see* N.Y. Crim. Proc. L., § 450.90, on October 1, 2010, but the appeal was "decided" (presumably denied) on November 5, 2010. (Docket No. 8, Response.) *See Sykes v. Hynes*, 322 F. Supp.2d 273, 276, n.1 (E.D.N.Y. June 22, 2004) (Petitioner's subsequent applications to the New York Court of Appeals seeking leave to appeal the Appellate Division's orders denying petitioner's 440.10 motions did not toll statute of limitations because the orders of the Appellate Division are not appealable.);

advised that he would be eligible for immediate release because was beyond his maximum expiration date and he thus filed the instant petition. Petitioner claims that he is not "a legal professional" and had no access to "persons with formal legal training in the law being that prison law clerks, or 'Jailhouse Lawyers,' are only taught to perform legal research and not how to assist inmates . . . with complex litigation issues. . . ." (Docket No. 8, ¶ II.) He also claims he has exercised "due diligence to avoid harm . . . through deprivation on [his] liberty beyond that ordered by the court as soon as it became apparent that [he] had a viable claim by initiating legal proceedings that have resulted [in the filing of the instant] petition." (Id., ¶ III, 2.) He claims that he "had no factual knowledge prior to the initial Motion pursuant to [the section] 440[.10] motion." (Id.)

Section 2244(d)(1)(D) states that the one year period of limitations shall not begin to run until "the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence." Under this section, a court must "determine when a duly diligent person in petitioner's circumstances would have discovered [the factual predicate]" for his claim. *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000). "The case law is clear that the one-year statute of limitations governing federal habeas corpus relief begins to run from the date on which the facts supporting the claim or claims presented could have been discovered 'through the exercise of due diligence ... regardless of whether petitioner actually discovers the relevant facts at a later date.' " *Adams v. Greiner*, 272 F. Supp. 2d 269, 273-74 (S.D.N.Y. 2003) (quoting *Wims*, 225 F.3d

---

*Marte v. Brown*, No. 09 Civ. 1036 (RJS)(KNF), 2009 WL 4405803, at * 3 (S.D.N.Y. Dec. 1, 2009) (under N.Y.Crim.Proc.L.,§ 450.90, no appeal to the New York Court of Appeals lies from an Appellate Division order denying a motion for leave to appeal a trial court's denial of a CPL § 440.10 motion) (citations omitted).

at 188); *accord Williams v. Phillips*, No. 04 Civ. 4653(DAB)(AJP), 2005 WL 1806161, at *10 (S.D.N.Y. Aug. 2, 2005).

As noted, the "latest" date petitioner could have discovered the factual predicate of his claim--*viz.*, the re-computation of his release dates by the "administrative determination" of DOCS to run the sentence at issue consecutive to the prior undischarged sentence--exclusive of whether through the exercise of due diligence he could have discovered it sooner, was when he received the second Legal Date Computation, which he claims he received upon his transfer to Livingston with a printout run date of December 9, 2005. *See Sullivan v. New York State Dept. Of Correctional Services,* 07 Civ. 7177(SHS)(FM), 2008 WL 4493602, at *2 (S.D.N.Y. Aug. 14, 2008) (court found that the one-year statute of limitations governing habeas petitioner's challenge to DOCS's administrative imposition of post-release supervision had run because petition had received multiple notices by DOCS of his time computation forms at least five years prior to filing the petition), *adopted by* No. 07 Civ. 7177(SHS)(FM), 2008 WL 4500772 (S.D.N.Y. Sept. 29, 2008); *see also Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir.2000) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."); *Fraser v. United States*, 47 F. Supp. 2d 629, 630 (D. Md.1999) ("Indeed, it is a well-recognized principle in analogous postponed accrual contexts that it is knowledge of facts, not their legal consequences, that causes the statute to start running.")).

Petitioner did not file a 440.10 motion until sometime in April 2010, *see* n.5, *supra*, at least four or more years after he received notice that DOCS had re-computed his release dates. His petition was not filed in the Northern District of New York until January 3, 2011; well more than one-year after he admittedly discovered the *fact* that his release dates had

been re-computed. Section 2255(f)(4)'s delayed accrual or factual predicate provision "is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final ... to the later date on which the particular claim accrued." *Wims*, 225 F.3d at 190. As noted, it readily appears that the factual basis of the claims raised herein--*i.e.*, the running of the sentence at issue and a prior undischarged sentence consecutively--was known factually, at the latest, in December 2005, when petitioner received a second Legal Computation Date printout from DOCS that showed his release dates had been extended based upon the re-calculation of his sentence. The factual predicate was known not in February 2010, when an inmate law clerk advised him that he had a basis for a claim, but when he was aware of the facts giving rise to the claims raised herein in 2005.

Moreover, petitioner waited what appears to have been over four years before again consulting with someone or determining on his own that DOCS' administrative recalculation of his release dates based upon running the sentence under attack consecutively with a prior undischarged sentence was the basis, viable or not, of a claim of ineffectiveness of counsel and the involuntariness of his plea. As noted, he claims that he was misinformed or misled by inmate law clerks and that he is not familiar with the law or legal procedures and thus he could not have discovered that he had such a claim until later when a different "jail house lawyer" told him he had a basis for a claim and needed to exhaust his state court remedies. However, "[i]n determining whether a petitioner has exercised due diligence, courts do not 'consider such subjective factors as the petitioner's intelligence, education,

7

language skills, or language skills, or mental stability.' " *Sullivan v. N.Y.S. Dept. of Corr. Servs.*, 07 Civ. 7177(SHS)(FM), 2008 WL 4493602, at * 6 (S.D.N.Y. Aug. 14, 2008) (quoting *Gonzalez-Ramos v. U.S.*, No. 05 Civ. 3974(LAP), 2007 WL 1288634, at *7 (S.D.N.Y. May 2, 2007) (quoting *Rodriguez v. N.Y.*, No. 01 Civ. 9374(KMW)(AJP), 2003 WL 289598, at *17 (S.D.N.Y. Feb. 11, 2003)) (*adopted by* No. 07 Civ. 7177(SHS)(FM), 2008 WL 4500772 (S.D.N.Y. Sept. 29, 2008)). "If [Section] 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). "In [Owens], the petitioner was a gang member with limited education who knew 'little about the law.'" *Sullivan*, 2008 WL 4493602, at * 6. "The [Seventh Circuit] nevertheless declined to give weight to those factors, observing that if they were relevant, Section 2244(d)(1) 'might as well not exist' for 'few prisoners are lawyers.' " *Id.* (quoting *Owens*, 235 F.3d at 359).

Therefore, even assuming that petitioner did not know or could not have known of the re-calculation of his sentence in 2005 when he received the second Legal Computation Date printout, he offers no objective reasons as to why he could [not] have discovered the facts through due diligence until more than four years later when another prison law clerk advised him he had a basis for a claim based on the re-calculation of his sentence and release dates. *See Wims*, 225 F.3d at 190. Moreover, it is the petitioner's "burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted." *Yekimoff v. N.Y. State Div. of Parole*, No. 02 Civ. 8710(BSJ), 2004 WL 1542256, at *5 (S.D.N.Y. July 8, 2004) (citing *Duamutef v. Mazzuca*, No. 01 Civ. 2553(WHP)(GWG), 2002 WL 413812, at *8-9 (S.D.N.Y. Mar. 15, 2002), and *Sorce v. Artuz*, 73 F. Supp. 2d 292, 298 (S.D.N.Y.1999)). As noted, petitioner was given factual

information regarding the re-calculation of the sentence at issue and the running of said sentence consecutively with a prior undischarged one in 2005, when he received the second Legal Computation Date printout. He knew then that his sentence had been re-calculated or determined to run consecutively with the prior one and even went so far as to ask someone about it. He cannot now claim that he was unaware of the facts giving rise to his claims herein until 2010 when he spoke to another prison law clerk.

Additionally, to the extent petitioner claims that he was ill-advised by inmate law clerks back in 2005, when he received the Legal Computation Date printout from DOCS, and his unfamiliarity with the law and the complexity of the legal issues presented by his claim--which he raises to convince the Court that he was not aware of the factual predicate of his claims--may also be construed as an argument in favor of equitable tolling of the statute of limitations, said argument must also be denied. *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (courts must liberally construe pro se pleadings to "raise the strongest arguments that they suggest.") (citation, internal quotation marks, and emphasis omitted). In order to be entitled to equitable tolling, a petitioner must establish "that extraordinary circumstances prevented him from filing his petition on time" and that he "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000) (per curiam), *cert. denied,* 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 63 (2000)). The United States Court of Appeals for the Second Circuit has set a "high bar" for the finding of extraordinary circumstances. *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (per curiam) ("[W]e set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling.")

The courts have consistently found that circumstances such as indigency, and ignorance of the law and legal procedures are not sufficiently "extraordinary" to merit equitable tolling. See Bowman v. Walsh, 2007 WL 2815711, at *2 (E.D.N.Y. Sept. 25, 2007) (collecting cases). Reliance on erroneous advice from a prison law clerk, and even an attorney, has been found not to be sufficiently extraordinary to entitle one to equitable tolling. See Carbone v. Cunningham, No. 06 Civ. 5710(JGK), 2007 WL 4205821, at * 3 (S.D.N.Y. November 28, 2007) (citing Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (noting that the Court of Appeals has found attorney error inadequate to create the extraordinary circumstances needed for equitable tolling); Urena v. Brown, No. 06 Civ. 3163, 2007 WL 3284646, at *2 (S.D.N.Y. Nov. 5, 2007) (equitable tolling not warranted where the petitioner's explanation for delay was erroneous advice from an inmate legal library clerk); Gonzalez-Ramos v. United States, No. 05 Civ. 3974, 2007 WL 1288634, at *10 (S.D.N.Y. May 2, 2007) (equitable tolling not warranted where the petitioner alleged that prison law clerks failed to inform him of the timeliness requirements for filing).

Therefore, even if petitioner had raised equitable tolling in his Response, see Triestman, 470 F.3d at 474, based on the claims of erroneous from the inmate law clerks and his unfamiliarity with the law, said claims would nonetheless be insufficient to equitably toll the statute of limitations.

### III. CONCLUSION

Accordingly, the petition is hereby dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. In addition, because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court

concludes that petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and accordingly this Court denies a certificate of appealability.

The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## IV. ORDERS

IT HEREBY IS ORDERED, that the petition is dismissed;

FURTHER, that a certificate of appealability is denied; and

FURTHER, that leave to appeal as a poor person is denied.

SO ORDERED

Dated:   January 4, 2012
         Buffalo, New York

_____
WILLIAM M. SKRETNY
Chief Judge
United States District Court